

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00577-CV

**IN THE INTEREST OF A.E.M.**, a Child

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-PA-01616
Honorable Brenda Chapman, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:         Sandee Bryan Marion, Chief Justice
                Karen Angelini, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  December 16, 2015

AFFIRMED

Darel M. appeals the trial court's order terminating his parental rights to A.E.M., asserting: (1) his trial counsel rendered ineffective assistance of counsel; and (2) the evidence is legally and factually insufficient to establish that termination of his parental rights was in A.E.M.'s best interest. We affirm the trial court's order.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his first issue, Darel contends his trial counsel rendered ineffective assistance of counsel. Darel's trial attorney, however, was retained. "[A] parent who hires his or her own attorney in lieu of the attorney appointed by the court cannot raise an ineffective assistance of counsel challenge to [a] parental termination order." *In re C.J.*, No. 04-14-00663-CV, 2015 WL 1089660, at *2 (Tex. App.—San Antonio Mar. 11, 2015, no pet.) (mem. op.); *see also In re V.G.*, No. 04-08-00522-CV,

2009 WL 2767040, at *12 (Tex. App.—San Antonio Aug. 31, 2009, no pet.) (mem. op.). Accordingly, Darel's first issue is overruled.

SUFFICIENCY

To terminate parental rights pursuant to section 161.001 of the Family Code, the Texas Department of Family and Protective Services has the burden to prove: (1) one of the predicate grounds in subsection 161.001(b); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b), (2) (West Supp. 2015); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In his second issue, Darel contends the evidence is legally and factually insufficient to establish that termination of his parental rights was in A.E.M.'s best interest. Darel does not challenge the sufficiency of the evidence to support the predicate findings, which included findings that Darel had: (1) engaged in conduct or knowingly placed A.E.M. with persons who engaged in conduct which endangered her physical or emotional well-being; (2) failed to comply with the provisions of a court order that specifically established the actions necessary for Darel to obtain the return of A.E.M. who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of A.E.M.'s removal for abuse or neglect; and (3) knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for A.E.M. for not less than two years from the date of the filing of the Department's petition.

### 1.     Standard of Review

The applicable burden of proof in a parental termination case is the clear and convincing standard. TEX. FAM. CODE ANN. § 161.206(a) (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014).

In reviewing the legal sufficiency of the evidence to support the termination of parental rights, the court must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id*.

In reviewing the factual sufficiency of the evidence to support the termination of parental rights, a court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

### 2.      Best Interest Factors

In reviewing the sufficiency of the evidence to support the best interest finding, we apply the factors set out in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id*. The list is not exhaustive, and not every factor must be proven to find that termination of the parent-child relationship is in the child's best

interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). A parent's future conduct may be measured by his past conduct in deciding whether termination is in a child's best interest. *In re O.N.H.*, 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.).

**3.    Analysis**

A.E.M. was five-years-old at the time of the final hearing. She had been placed in the care of Thelma J. from the time of her removal from her parent's care on April 21, 2014 until she was returned to her mother's care on June 5, 2015. The final hearing was held on July 22, 2015. The Department's legal worker, A.E.M.'s mother, and Thelma J. all testified that terminating Darel's parental rights was in A.E.M.'s best interest.

*a.    A.E.M.'s Desires*

Thelma J. and the Department's legal worker both testified A.E.M. did not have any bond with Darel. The Department's legal worker stated A.E.M. only had limited phone contact with Darel since his incarceration. When the Department's legal worker mentioned Darel's name to A.E.M. on the telephone the morning of the final hearing, A.E.M. began whining and did not want to talk about him. Before that time, A.E.M. never brought up Darel in her conversations with the Department's legal worker. Thelma J. also testified A.E.M. never asked to call or write Darel or for a picture of him. Darel's mother testified A.E.M. had written Darel one letter while A.E.M. was visiting with her.

*b.    A.E.M.'s Present and Future Emotional and Physical Needs, Present and Future Emotional and Physical Danger to A.E.M., and Darel's Parental Abilities*

Darel was sentenced on April 28, 2014 to six years' imprisonment for two felony counts of family violence. In one count, Darel assaulted his ex-wife, and in the other count, Darel assaulted A.E.M's mother, who was then married to Darel.[1] A.E.M. was present during the assault

---

[1] Darel also was previously convicted of a misdemeanor count of family violence against his ex-wife.

on her mother. A.E.M.'s mother stated Darel beat and choked her, dragged her out of the house, and locked the door. A.E.M.'s mother testified Darel previously assaulted her on four or five other occasions. In addition to the assault for which Darel was convicted, A.E.M.'s mother testified A.E.M. also was present during one of the other assaults.

The Department's legal worker testified it would be very emotionally detrimental for a child to witness the domestic abuse of his or her mother. A.E.M.'s mother stated A.E.M. was very distraught and fearful when she witnessed the abuse, and Thelma J. stated A.E.M. was receiving therapy because Darel's abuse of her mother traumatized A.E.M. Even Darel admitted A.E.M. was crying and screaming during the abuse. Although Darel stated he took full responsibility for the offenses, when asked if he repeatedly punched his ex-wife in the face during the assault, he responded, "We punched each other." Similarly, Darel stated during the assault on A.E.M.'s mother, they were engaged in a mutual combat.

Darel's mother and his cousin testified they witnessed Darel around A.E.M., and he was a loving father. Their observations, however, were from a very limited number of visits because Darel lived in San Antonio while his mother and cousin lived in Corpus Christi. Although Darel testified that he exclusively cared for A.E.M. for six months while A.E.M.'s mother was in rehab, he subsequently admitted the six months was not a continuous period of time. A.E.M.'s mother stated the longest Darel had continuously cared for A.E.M. was two weeks after which A.E.M.'s mother had to leave rehab to care for A.E.M.

c.      *Programs Available to Assist and Plans*

Darel completed an anger management class and was on the waiting list for a domestic violence class. Darel's incarceration, however, precluded him from completing the other services because the services were not available in prison. Darel's projected release date was October 9, 2016, more than one year after the final hearing; however, no final release date was set.

A.E.M.'s mother had completed her service plan, and A.E.M. was returned to her care approximately one month before the final hearing. Although A.E.M.'s mother had drug and alcohol issues in the past, she had completed treatment and stated she would continue with drug and alcohol counseling the rest of her life.

### d.     Darel's Acts or Omissions

Prior to his incarceration, Darel received disability benefits from the VA of approximately $3,700 per month and social security disability benefits of approximately $900 per month. The social security disability benefits immediately stopped when he was incarcerated; however, the VA disability benefits continued to be paid through March of 2015. Despite knowing A.E.M. and another of his children were in Thelma J.'s care since April of 2014, Darel did not pay any support until ordered to do so by the court in December of 2014. As a result, Darel paid only $1,500 in support for his two children for the fourteen or fifteen months the children were in Thelma J.'s care. Darel asserted his disability benefits were being garnished by the attorney general for child support owed to three other children; however, the evidence established Darel paid a total of $1,500 in support between December of 2014, when the court entered an order, and March of 2015.

### e.     Conclusion

Having reviewed the entire record, we hold the evidence is sufficient to support the trial court's finding that termination was in A.E.M.'s best interest.

### CONCLUSION

The trial court's order is affirmed.

Sandee Bryan Marion, Chief Justice